NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No. EC-11-1346-PaDMk |
| | ) |
| CHRISTINE M. EMMERSON, | ) Bankr. No. 09-36284-C |
| | ) |
| Debtor. | ) Adv. No.   09-02626-C |
| _____ | ) |
| | ) |
| CHRISTINE M. EMMERSON, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| TONY D. REGIS, | ) |
| | ) |
| Appellee, | ) |
| | ) |
| MICHAEL MCGRANAHAN, Chapter | ) |
| 13 Trustee; UNITED STATES | ) |
| TRUSTEE, | ) |
| | ) |
| Interested Parties. | ) |
| _____ | ) |

Argued and Submitted on March 22, 2012
at Sacramento, California

Filed – April 3, 2012

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Christopher M. Klein, Chief Bankruptcy Judge, Presiding

Appearances:    Mark J. Hannon, Esq. for Appellant Christine M.
Emmerson; Herman Franck, Esq. for Appellee Tony D.
Regis

Before: PAPPAS, DUNN and MARKELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

-1-

Chapter 7[2] debtor Christine M. Emmerson ("Emmerson") appeals the bankruptcy court's judgment entered June 28, 2011, declaring that a state court judgment against her in favor of creditor Tony D. Regis ("Regis") was excepted from discharge under § 523(a)(6) based on the application of issue preclusion. We AFFIRM.

**FACTS**

This is the second appeal to the Panel from the bankruptcy court's judgment in this adversary proceeding. Our Memorandum deciding the previous appeal contained a detailed recitation of the relevant facts. Emmerson v. Regis (In re Emmerson), BAP case no. EC-10-1150-MoDH (9th Cir. BAP Mar. 25, 2010). Because the parties are also familiar with the facts, we need only summarize them here, and describe the events following our remand of the judgment to the bankruptcy court in connection with the first appeal.

Emmerson and Regis are the parents of a minor child ("the Child"). Their relationship ended acrimoniously, prompting a multi-year child custody battle in Sacramento Superior Court, Family Court Department (the "Family Court Proceeding"). While the Family Court Proceeding was pending, Emmerson commenced an action against Regis seeking a partition of the parties' jointly-owned former residence in Sacramento Superior Court, Civil Court Department (the "Partition Action"). Regis filed a cross-complaint in the Partition Action, alleging claims against Emmerson for child abduction and child enticement in which he

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

sought, <u>inter alia</u>, an award of compensatory and punitive damages pursuant to Cal. Civ. Code § 49.[3]

In August 2008, before the trial in the Partition Action, the Family Court awarded full legal custody of the Child to Emmerson, with no visitation rights to Regis unless initiated and sought by the Child.

Trial was scheduled in the Partition Action for October 6, 2008. Emmerson failed to appear at trial, and the state court conducted a nonjury trial. The evidence and testimony offered by Regis were uncontroverted. On February 5, 2009, the state court entered an Order Following Trial in the Partition Action (the "Civil Court Order") awarding Regis $473,500 in damages, including $50,000 in punitive damages, and $400,000 in general damages as compensation for the "loss of his relationship with [the Child] for a period of eight years and extreme and severe emotional distress suffered by that loss [at $50,000 per year]." The state court also awarded Regis $23,500 in damages for breach of contract.[4] Emmerson did not appeal the Civil Court Order.

---

[3] **Cal. Civ. Code § 49. Protection from abduction, seduction, and injury to servant.**

The rights of personal relations forbid: (a) The abduction or enticement of a child from a parent, or from a guardian entitled to its custody; (b) The seduction of a person under the age of legal consent; (c) Any injury to a servant which affects his ability to serve his master, other than seduction, abduction or criminal conversation.

[4] Recall that the original complaint filed by Emmerson in state court was for partition of a residence jointly owned by her and Regis. As to that cause of action, the state court found her in breach of contract by failing to pay her half of mortgage payments on that residence for thirty-two months. The state court awarded Regis $23,500 in damages for her breach. The bankruptcy
(continued...)

-3-

When Emmerson thereafter filed a petition under chapter 7, Regis commenced this adversary proceeding seeking to except the entire amount awarded to him by the state court, $473,500, from discharge by Emmerson under § 523(a)(6). After Emmerson filed an answer, Regis filed a motion for summary judgment relying on the issue preclusive effects of the Civil Court Order. Emmerson opposed the motion.

The bankruptcy court conducted a hearing on Regis's motion for summary judgment on April 27, 2010. After hearing from counsel for both Regis and Emmerson, the court held that the Civil Court Order's award of damages under Cal. Civ. Code § 49 met the requirements for an exception to discharge under § 523(a)(6), and thus, issue preclusion applied. The bankruptcy court granted the summary judgment motion and entered a judgment on April 29, 2010, declaring that $450,000 of the award in the Civil Court Order to Regis was nondischargeable under § 523(a)(6). Emmerson appealed the bankruptcy court's judgment to the Panel.

On appeal, the Panel agreed with the bankruptcy court that, under the facts of the case and applicable state law, the award of damages to Regis made by the state court under Cal. Civ. Code § 49 met the five threshold requirements for issue preclusion. In re Emmerson, Mem. Dec. at 17 ("[W]e conclude that all five threshold elements have been satisfied."). However, the Panel noted that, under California law, a bankruptcy court's decision to apply issue

---

[4](...continued)
court would later determine that only the $450,000 damage award, based on Cal. Civ. Code § 49, was nondischargeable under § 523(a)(6). Tr. Hr'g 13:14—14:6, April 27, 2010. The amount of the nondischargeable award is not at issue in this appeal.

-4-

preclusion does not end with analysis of the five threshold elements. Instead, in California, a trial court is required to conduct a "mandatory 'additional' inquiry into whether imposition of issue preclusion would be fair and consistent with sound public policy." Mem. Dec. at 15, citing Khaligh v. Hadegh (In re Khaligh), 338 B.R. 817, 824-25 (9th Cir. BAP 2006). The Panel determined that "the record [in this appeal] is devoid of any indication that the bankruptcy court conducted the mandatory fairness/public policy inquiry." In re Emmerson, Mem. Dec. at 17. Therefore, although affirming that the bankruptcy court had properly determined that issue preclusion was available in this case, the Panel remanded the action to the bankruptcy court with instructions that it make an inquiry whether application of issue preclusion in this case would be fair and consistent with California public policy. Id. at 18.

On remand, Emmerson filed a motion for summary judgment, arguing that the state court did not have subject matter jurisdiction to enter its order, and that principles of fairness and public policy warranted against the application of issue preclusion. Emerson asserted that the Civil Court Department lacked subject matte jurisdiction of the child abduction and child endangerment claims which should instead have been raised in the Family Court Proceeding pending before the Family Court Department. Emmerson argued that because the Civil Court Department lacked subject matter jurisdiction, it would be unfair to apply issue preclusion to the Civil Court Order. Regis opposed Emmerson's motion and filed yet another motion for summary judgment.

-5-

The bankruptcy court held another hearing on June 21, 2011. After taking the issues under submission, the bankruptcy court entered a memorandum of decision on June 28, 2011 ("Memorandum"). In it, the court first noted that, as a result of the BAP's decision, the Memorandum was the law of the case that the five threshold requirements for issue preclusion had been satisfied. Consequently, the court reasoned, the only question for decision was whether the application of issue preclusion in this case would be fair and consistent with sound public policy and would not result in injustice.

In addressing the parties' arguments, the bankruptcy court observed that there was no statutory restriction on the power of a California civil court to enter orders in family law-related matters. The court reviewed the case law and noted that, at most, the cases cited by Emmerson "articulate prudential considerations to be taken into account in management of conflicting and multiplicitous litigation." The court observed that, at the time it made its prior decision, it had been "mindful" of the seemingly inconsistent positions taken by the family and civil court in their orders. Nevertheless, the bankruptcy court considered that it would be "unseemly" for it to interfere with the "harmonization of inconsistent decisions rendered by the same state court." In this respect, it was significant to the bankruptcy court that Emmerson could still request review of the Civil Court Order either by the civil court or, failing relief there, in the state appellate courts.

The bankruptcy court concluded that application of issue preclusion in this case was indeed consistent with notions of

-6-

fairness and public policy considerations, and concluded it should reaffirm its judgment declaring Regis's claim against Emmerson nondischargeable based on the Civil Court Order. Since the parties' latest summary judgment motions were not necessary to trigger the bankruptcy court's analysis on remand, both motions were denied. The bankruptcy court entered another judgment on June 28, 2011, determining that the Civil Court Order awarding Regis $450,000 was excepted from Emmerson's discharge pursuant to § 523(a)(6).

Emmerson filed a timely notice of appeal on July 1, 2011.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). The Panel has jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court abused its discretion in applying issue preclusion.

**STANDARD OF REVIEW**

If issue preclusion is available, the decision to apply it is reviewed for abuse of discretion. Dias v. Elique, 436 F.3d 1125, 1128 (9th Cir. 2006); Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 108 (9th Cir. BAP 2007).

In applying an abuse of discretion test, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard

-7-

[to the facts] was (1) illogical, (2)implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted). If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion. Id.

**DISCUSSION**

I.

It is helpful to note first what the issues are, and are not, in this appeal.

The bankruptcy court determined that, through the application of preclusion in this action, Regis has shown that, under § 523(a)(6), the $450,000 debt from the Civil Court Order was excepted from discharge in Emmerson's bankruptcy case. The bankruptcy court's decision was appealed to this Panel. The Panel remanded the action to the bankruptcy court with the single instruction that it should review the application of issue preclusion solely to determine if it was consistent with fairness and public policy. On remand, the bankruptcy court concluded that its decision, as affirmed on appeal by the Panel, that the five threshold elements of issue preclusion were satisfied constituted the law of the case, something Emmerson has not challenged in this appeal. Consequently, the only issue presented to the Panel here is whether, on remand, the bankruptcy court abused its discretion in deciding that fairness and public policy were not offended in applying issue preclusion to the Civil Court Order.

-8-

II.

The bankruptcy court addressed both public policy and fairness in its decision. We discern no abuse of discretion in its decision.

Under California case law, the public policies underlying the doctrine of issue preclusion must be examined before concluding that it should be applied in a particular setting. <u>Lucido v. Super. Ct.</u>, 795 P.2d 1223, 1226 (Cal. 1990). Those policies include:

> conserving judicial resources and promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and avoiding the harassment of parties through repeated litigation. (<u>Allen v. McCurry</u> (1980) 449 U.S. 90, 94 [66 L. Ed. 2d 308, 101 S. Ct. 411]; <u>Montana v. United States</u> (1979) 440 U.S. 147, 153–154 [59 L. Ed. 2d 210, 99 S. Ct. 970]; [<u>People v.]</u> <u>Sims</u>, [651 P.2d 333 (Cal. 1982)]; <u>Syufy Enterprises v. City of Oakland</u> (2002) 104 Cal. App.4th 869, 878 [128 Cal. Rptr. 2d 808].)

<u>Murray v. Alaska Airlines</u>, 237 P.3d 565, 577 (Cal. 2010); <u>Vandenburg v. Super. Ct.</u>, 21 Cal. 4th 815, 829 (1999) (policies include "to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation."). The bankruptcy court examined several different policy considerations before it reached its decision.

First, the bankruptcy court observed that policies of judicial economy and preserving the integrity of the judicial system are promoted by allowing the state courts to resolve alleged inconsistencies in their judgments. As the court noted, in this case, the superior court that entered the two judgments in question is presumably in a better position to address any inconsistencies in the orders. Moreover, if after Emmerson asks

-9-

the state court for relief she remains dissatisfied with its decision, she may resort to the district court of appeal. The bankruptcy court reasoned that, under the principle of comity, this review function should be performed at the state court level.

We agree with the bankruptcy court. The comity doctrine counsels lower federal courts to resist engagement in certain areas otherwise falling within their jurisdiction. The doctrine reflects "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." Levin v. Commerce Energy, Inc., 130 S. Ct. 2323, 2330 (2010). Comity between state and federal law may be considered in examining the public policy implications of issue preclusion. Murray, 237 P.3d at 577.

The importance of comity with state law is heightened under the facts of this case because Emmerson has asked the bankruptcy court to rule in a dispute implicating the state law of domestic relations. The Supreme Court has historically cautioned against involvement of the federal courts in the relations of parent and child:

> One of the principal areas in which this Court has customarily declined to intervene is the realm of domestic relations. Long ago we observed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." In re Burrus, 136 U.S. 586, 593, 34 L. Ed. 500, 10 S. Ct. 850 (1890). See also Mansell v. Mansell, 490 U.S. 581, 587, 104 L. Ed. 2d 675, 109 S. Ct. 2023 (1989) ("[D]omestic relations are preeminently matters of state law"); Moore v. Sims, 442 U.S. 415, 435, 60 L. Ed. 2d 994, 99 S. Ct.

2371 (1979) ("Family relations are a traditional area of state concern").

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12-13 (2004).

The damages awarded in the Civil Court Order were based on "loss of [Regis's] relationship with [the Child] for a period of eight years and extreme and severe emotional distress caused by that loss." Civil Court Order at 7. Although the domestic relations exception is not directly applicable here because the Civil Court Order does not affect a divorce, alimony, or child support, Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992), the longstanding policy of the federal courts to avoid entanglement in disputes related to the parent-child relationship is clearly implicated, something that reinforces the bankruptcy court's decision to apply the doctrine of comity.

The second area of public policy addressed by the bankruptcy court relates to Emmerson's argument that the Superior Court Civil Court Department lacked subject matter jurisdiction to enter the Civil Court Order because "family law issues can not be addressed or adjudicated in civil courts and that when a family law case is pending, the civil court lacks subject matter jurisdiction because the family court already has subject matter jurisdiction." Emmerson Op. Br. at 5. The bankruptcy court considered this argument but rejected it for three reasons: (1) there is no statutory grounds for restricting the subject matter jurisdiction of the civil court; (2) Emmerson's argument is based solely on case law which does not establish that the civil court lacked jurisdiction and, at most, suggests that prudential considerations be taken into account in managing conflicting litigation; and

-11-

(3) sound public policy and fairness counsel in favor of letting California courts resolve questions of their own jurisdiction over questions of California law.

The bankruptcy court's third reason for its decision warrants our first comment, because it is supported by a published, precedential opinion of the Panel. Emmerson commenced the Civil Court Proceeding for partition of a house jointly owned by her and Regis. Regis asserted a cross-claim seeking, among other relief, damages for violation of Cal. Civ. Code § 49. Emmerson answered the cross-claim, but did not raise the affirmative defense of lack of subject matter jurisdiction. Emmerson then failed to appear at trial, and the state court ultimately entered a judgment in favor of Regis and against her. Emmerson did not appeal. In other words, Emmerson never raised the jurisdiction issue in the state court, either in the superior court or in an appeal.

In Audre, Inc. v. Casey (In re Audre, Inc.), 216 B.R. 19, 28 (9th Cir. BAP 1997), the Panel examined the claim of a creditor that asked the bankruptcy court to consider the subject matter jurisdiction of a California state court judgment. Another creditor challenged the claim on the grounds that it was based on a judgment by the family court that did not have jurisdiction over tort claims. The Panel ruled, "neither [plaintiff] raised lack of jurisdiction issues at the Family Court trial or in their trial and post-trial briefs. They should not be allowed to do so for the first time in the bankruptcy court. The appropriate place for such argument is the California Court of Appeals." Id. In short, not only does Audre stand for the proposition that the California Court of Appeals is the appropriate place for determining the

-12-

subject matter jurisdiction of a judgment that is based on state law, but failure to raise the jurisdictional argument in the state proceeding, as in this case, prevents the jurisdiction argument from being considered by the bankruptcy court. See generally Greener v. Workers' Comp. Appeals Bd., 6 Cal. 4th 1028, 1036 (1993) (challenge to subject matter jurisdiction "is properly brought by demurrer to the complaint.").

The bankruptcy court was correct in its conclusion that Emmerson had access to the civil court and state appellate courts to seek relief from the Civil Court Order. If Emmerson is correct that the civil court lacked subject matter jurisdiction, Cal. Code Civ. Proc. 473(d)(2011) provides that the state court may, at any time,[5] set aside that order if it is void on its face. Talley v. Valuation Counselors Grp., Inc., 191 Cal. App. 4th 132, 146 (Cal. Ct. App. 2010). An order is void on its face if the court entering the order did not have subject matter jurisdiction. Sindler v. Brennan, 105 Cal. App. 4th 1350, 1353 (Cal. Ct. App. 2003).

Further, as the bankruptcy court correctly observed, if she does not get the relief from judgment she seeks in the superior court, Emmerson still has access to the state appellate courts under Cal. Code Civ. Proc. §§ 100 ("Any party shall have the right to appeal any judgment or final order consistent with the law governing appeals."); 904.1 (appeal from an order or judgment of

---

[5] Cal. Code Civ. Proc. § 473(b) provides that a party seeking relief from judgment on the grounds of mistake, inadvertence, surprise, or excusable neglect must bring a motion within six months of entry of the order. However, a party seeking to set aside a void order or judgment under Cal. Code Civ. Proc. § 473(b) has no time limitation.

-13-

the superior court is to the district court of appeals). Emmerson is free at either the superior court or court of appeals to pursue her argument that the civil court division did not have subject matter jurisdiction: "Lack of subject matter jurisdiction is not waived by failure to demur, but can be attacked by motion or suggestion <u>at any time</u> during trial or on appeal, or by application for an extraordinary writ, and even by collateral attack in most cases[.]" <u>Great W. Casinos v. Morongo Band of Mission Indians</u>, 74 Cal. App.4th 1407, 1418-19 (Cal. Ct. App. 1999).

In short, the bankruptcy court did not err in its legal conclusion that Emmerson had access to the state superior and appellate courts to seek redress from inconsistencies in the two orders.

The bankruptcy court was also correct in its conclusion that there were no statutory grounds for denying the jurisdiction of the civil court to enter the Civil Court Order. A California superior court has subject matter jurisdiction over most original "causes." CAL. CONST. ART VI § 10.[6] The statutory grant of jurisdiction to the superior court is in Cal. Code Civ. Proc.

---

[6] **CAL. CONST. ART. VI § 10. Original jurisdiction**

The Supreme Court, courts of appeal, superior courts, and their judges have original jurisdiction in habeas corpus proceedings. Those courts also have original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition. The appellate division of the superior court has original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition directed to the superior court in causes subject to its appellate jurisdiction.
Superior courts have original jurisdiction in all other causes.

-14-

§ 410.10: "A court of this state [defined in the Constitution as the Supreme Court, the courts of appeals, and the superior court] may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." It is important to recognize that this grant of jurisdiction is to the superior court as a whole:

> In a multi-department superior court . . . Jurisdiction is vested by the constitution in the court, not a particular judge or department . . . Whether sitting separately or together, the judges hold but one and the same court. The division into departments is for the convenient dispatch of business.

People v. Stuyvesant Ins. Co., 261 Cal. App. 2d 773, 785 (Cal. Ct. App. 1968).

Two of the cases relied on by Emmerson acknowledge that the civil court has jurisdiction. Burkle v. Burkle, 144 Cal. App. 4th 387, 395 (Cal. Ct. App. 2007); Askew v. Askew, 22 Cal. App. 4th 942, 956 (Cal. Ct. App. 1994). However, Emmerson alleges those cases go on to say that, where there is an open family law case, only the family court has subject matter jurisdiction over all domestic matters, and the court lacks jurisdiction over a subsequent civil action in a family law matter.

As noted in Stuyvesant Ins. Co., the jurisdictional grant remains in the court as a whole, and only divests other departments of jurisdiction to prevent interference with the exercise of power by the assigned department:

> [W]here a proceeding has been duly assigned for hearing and determination to one department of the superior court by the presiding judge of said court in conformity with the rules thereof, and the proceeding so assigned has not been finally disposed of therein or legally removed therefrom, it is beyond the jurisdictional authority of another department of the same court to

-15-

> interfere with the exercise of the power of the department to which the proceeding is so assigned.

261 Cal. App.2d at 786. We conclude that the cases cited by Emmerson are consistent with this restricted jurisdiction principle. Each of the cases holds that a family court has jurisdiction over the matters before it, and would oust the jurisdiction of any subsequently filed civil suit over those specific matters. However, pendency of the family court action does not oust jurisdiction over matters that were not presented in the family court or necessary to carry out its work.

In Askew v. Askew, the Superior Court Family Court Department characterized five properties as community property. One spouse then commenced an action in the Superior Court Civil Court Department challenging that characterization. The appellate court ruled that "the civil trial court in effect usurped the power and obligation of the family law court to determine the character of the five properties." Askew, 22 Cal. App. 4th at 956.

In Burkle v. Burkle, the family court entered an interim support order. One spouse then pursued a civil proceeding to enforce that support order. The appellate court ruled that "when a dissolution proceeding is pending, neither party to that proceeding has the right to file a separate civil action to enforce an interim support order issued in the dissolution proceeding." Burkle, 144 Cal. App. 4th at 395. The other cases cited by Emmerson either represent that the jurisdiction of the family court restricts the jurisdiction of subsequent civil proceedings on a narrow range of matters, or that the civil court should not consider certain types of family law related cases.

-16-

In short, as shown by the very cases cited by Emmerson, a family court's exercise of the jurisdiction of the superior court does not divest other departments, such as the civil court, of subject matter jurisdiction except to the extent it is necessary to carry out the family court's work. Emmerson's argument that the exercise of jurisdiction by the family court completely divests the other departments of jurisdiction over family law matters in general lacks merit. The cited cases are also consistent with the bankruptcy court's determination that "at most, the cases articulate prudential considerations to be taken into account in management of conflicting and multiplicitous litigation." Memorandum at 5.

As to the "fairness" prong of public policy, the bankruptcy court acknowledged that the two rulings of the superior court were arguably inconsistent, of which the bankruptcy court was aware at the time of its original ruling. Nevertheless, it held that "upon mature reflection on remand, this court remains persuaded that the interests of fairness, sound public policy, and avoiding injustice are best served by imposing issue preclusion in this situation." Memorandum at 3. Again, that Emmerson still has access to the state superior and appellate courts to seek redress from any alleged inconsistencies in the two orders weighs heavily in favor of the fairness of application of issue preclusion in this case.

All things considered, we conclude that the bankruptcy court fulfilled the instructions of the Panel on remand, giving full consideration to whether applying issue preclusion would be fair to Emmerson under these facts, whether it would be consistent with sound public policy, and whether injustice would result if the

-17-

Civil Court Order were given preclusive effect. The bankruptcy court applied the correct law to the facts of this case, and its conclusions were not illogical, implausible, or without support in inferences that may be drawn from the facts in the record. The bankruptcy court did not abuse its discretion.

**CONCLUSION**

We AFFIRM the judgment of the bankruptcy court.