**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0478n.06

Case Nos. 18-3698/3705

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 12, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| LOUIS J. MALCMACHER, D.D.S., et al., | ) | |
| | ) | |
| Plaintiffs-Appellants/Cross-Appellees, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| JAMES T. JESSE, D.D.S., | ) | OHIO |
| | ) | |
| Defendant-Appellee/Cross-Appellant. | ) | |
| | ) | |

BEFORE: SILER, GIBBONS, and DONALD, Circuit Judges.

**SILER**, Circuit Judge. This case involves two dentists—James Jesse and Louis Malcmacher—who are suing one another for allegedly acting improperly during the course of a prior lawsuit that Jesse initiated against Malcmacher and Malcmacher's company (American Academy of Facial Esthetics, LLC ("AAFE")) in California (the "California litigation"). Malcmacher asserted a counterclaim in that case, and, ultimately, all claims failed. Malcmacher then brought this suit against Jesse in Ohio (the "Ohio litigation"), claiming that Jesse's prior suit amounted to malicious prosecution and abuse of process. Jesse fired back with counterclaims. The district court rejected Malcmacher's claims and Jesse's counterclaims. Both parties appeal. We **REVERSE IN PART** and **AFFIRM IN PART**.

I.

Malcmacher formed the AAFE in an effort to teach medical professionals—such as physicians and dentists—how to use products like Botox and dermal fillers. To achieve its mission, the AAFE presented several lectures and training courses throughout North America from 2011 to 2014.

In 2011 and again in 2012, Jesse, a California-licensed dentist, contracted with the AAFE to present seminars—including seminars pertaining to the use of Botox and dermal fillers scheduled in San Diego—on the AAFE's behalf in exchange for a fee.

Shortly after Jesse agreed to host the 2012 seminars, Malcmacher received a letter from the Dental Board of California ("Board") directing him to cease and desist "all AAFE courses conducted in the State of California which include . . . hands-on training by dental professionals involving" Botox injection procedures. The letter explained: "dentists licensed by the Board to practice in California are . . . prohibited from participating in hands-on training involving . . . Botox or dermal filler injection procedures[] on human models" *unless* such procedures are "administered in conjunction with the practice of dentistry . . . ."

Notwithstanding the letter, Malcmacher did not cancel any of the seminars, and Jesse hosted them as planned.

According to Jesse, Malcmacher never mentioned the letter; indeed, Jesse testified that he did not learn of the letter until a Board investigator presented him with a copy of it on July 11, 2012. The investigator also told Jesse that the Board believed that he had unlawfully provided Botox injections during the February seminar. Jesse denied any misconduct.

Worried about the investigation, Jesse called Malcmacher, who informed Jesse that he had taken care of the Board's concerns. Indeed, Jesse testified that Malcmacher assured him that the Board had approved the AAFE's prior courses and that the seminars could continue as scheduled.

Based on Malcmacher's representations, Jesse entered into a third contract with the AAFE in December 2012, under which he agreed to present several Botox seminars on the AAFE's behalf from January to June 2013.

In August 2013, the Board formally accused Jesse of unlawfully administering Botox during certain seminars he hosted on the AAFE's behalf. Specifically, the Board claimed that, during the 2012 seminars in San Diego, Jesse unlawfully allowed course participants to perform Botox injections on live patients.

Jesse then called Malcmacher—who had also received a citation—to develop a defense against the Board's charges. Jesse and Malcmacher agreed to retain the same counsel and present a joint defense. Further, at least according to Jesse, Malcmacher orally promised to pay any attorneys' fees Jesse incurred defending against the Board's accusation.

Jesse resolved the Board's accusations against him via a private citation order, which required him to pay a fine.

## A.     The California Litigation

Upon the disposition of the Board's charges, Jesse asked Malcmacher to pay his attorney's fees. Malcmacher refused, prompting Jesse to file suit against Malcmacher and the AAFE in California. In the complaint, Jesse alleged that Malcmacher and the AAFE: (1) intentionally misrepresented the scope of the Board's scrutiny as outlined in the cease and desist letter, as the letter "clearly stated that [Malcmacher's] workshops [were] illegal"; (2) intentionally concealed the Board's cease and desist letter; (3) falsely promised to reimburse Jesse for any attorneys' fees

he incurred defending against the Board's charges; (4) negligently misrepresented to Jesse that the activities Malcmacher instructed Jesse to perform at the February seminars did not violate California law; (5) breached the oral contract they entered into with Jesse wherein they promised to pay his attorneys' fees; (6) breached the covenant of good faith and fair dealing; (7) violated California laws prohibiting elder abuse; and (8) negligently developed the seminars such that they included "practices which [the Board] considered" unlawful under California law.

Malcmacher responded with a counterclaim, alleging that Jesse breached the AAFE contracts.

In discovery, Malcmacher asked: "what allegedly were you giving to AAFE in return for the alleged promise to pay your legal fees?" to which Jesse responded, "I don't know." Malcmacher asked again: "Did you promise anything to AAFE or [Malcmacher]?" Jesse replied: "No."

The district court granted Jesse's motion for summary judgment on Malcmacher's counterclaim. It granted in part and denied in part Malcmacher's motion for summary judgment. *Jesse v. Malcmacher*, No. 5:15-cv-01677, 2016 WL 9450683, at *1 (C.D. Cal. Apr. 4, 2016). The court dismissed Jesse's claims for intentional and negligent misrepresentation, elder abuse, false promise, and negligence, reasoning that Jesse had failed to produce evidence to support those claims. *Id.* at *6-10. Nevertheless, it held that summary judgment was improper with respect to Jesse's concealment, breach of contract, and breach of covenant of good faith claims because the record contained disputed facts regarding whether Malcmacher and Jesse entered an oral agreement, and, if so, whether that agreement was supported by consideration. *Id.* at *8.

Jesse's claims that survived summary judgment failed at trial. The court directed a verdict in favor of Malcmacher on Jesse's breach of contract and breach of covenant of good faith claims,

reasoning that Jesse failed to present "any evidence [on which] a reasonable jury could find that" consideration supported the oral contract, if any. Finally, the jury returned a verdict in favor of Malcmacher on Jesse's concealment claim.

### B.     The Present Litigation

After the California litigation ended, Malcmacher initiated the present litigation, asserting claims against Jesse for malicious prosecution and abuse of process. Specifically, Malcmacher alleged that Jesse lacked probable cause to assert *each* of his claims. He further alleged that Jesse asserted the claims for an improper purpose: namely, to "drive-up Malcmacher's . . . costs and to force an unreasonable settlement."

Unsurprisingly, Jesse denied Malcmacher's allegations and asserted counterclaims against Malcmacher for intentional interference with business relations, abuse of process, and malicious prosecution. He based his malicious prosecution and abuse of process claims on the fact that Malcmacher asserted a counterclaim against him during the California litigation.

The district court granted Malcmacher's motion for judgment on the pleadings on Jesse's counterclaims. It reasoned that res judicata barred Jesse's counterclaim for intentional interference with business relations because he could have brought that claim during the California litigation. The court also concluded that res judicata barred Jesse's malicious prosecution and abuse of process counterclaims and that, even if those counterclaims could be heard on the merits, Jesse failed to adequately allege them.

Later, the district court granted Jesse's motion for summary judgment, thereby dismissing Malcmacher's claims. In so ruling, the court reasoned that res judicata barred Malcmacher's claims to the extent he based them on the fact that Jesse purportedly filed a false and contradictory affidavit; indeed, the court explained, "[t]he truthfulness of [Jesse's] declaration will not be

relitigated in this [c]ourt." Alternatively, the court noted that, to prevail on the merits of his claims, Malcmacher "would have to present evidence by which a jury could conclude that [Jesse] pursued the California [l]itigation for an ulterior . . . purpose and/or that [Jesse] acted with malice and without probable cause [in] pursuing the California action," and that Malcmacher had "failed to carry [that] burden."

## II.

Both Jesse and Malcmacher appeal the district court's judgments against them. Both parties argue that the district court erred to the extent it concluded that their claims were barred by res judicata. Further, Malcmacher argues that genuine disputes of material fact exist as to his claims, while Jesse contends that his allegations state plausible counterclaims.

We address each argument below.

### A.      **Whether Res Judicata Bars Malcmacher's Claims or Jesse's Counterclaims**

The district court's opinions appear to reason (at least in part) that res judicata bars Malcmacher's claims and Jesse's counterclaims.

California law recognizes claim preclusion, also known as res judicata, and issue preclusion, also known as collateral estoppel.[1] *Noble v. Draper*, 73 Cal. Rptr. 3d 3, 10 (Cal. 2008). Of course, res judicata does not bar claims that had not accrued or were not otherwise in existence at the time of the filing of the initial complaint. *Allied Fire Prot. v. Diede Constr., Inc.*, 25 Cal. Rptr. 3d 195, 199 (Cal. Ct. Appl. 2005). Collateral estoppel, on the other hand, "precludes

---

[1] California law governs the preclusive effect of the judgments rendered in the California litigation. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001) (recognizing that "federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity," but adopting, as a matter of federal common law, the rule that federal courts should apply the preclusion law of the state courts in which the federal diversity court sits).

relitigation of issues argued and decided in the prior proceedings." *Noble*, 73 Cal. Rptr. 3d at 10 (citation and internal quotation marks omitted).

Here, res judicata does not bar either party's claim for malicious prosecution or abuse of process. Malcmacher's claims—which are based on Jesse's conduct during the California litigation—did not accrue until favorable termination of the initial lawsuit. *See Ray v. First Fed. Bank*, 71 Cal. Rptr. 2d 436, 438 (Cal. Ct. App. 1998). The same is true for the malicious prosecution and abuse of process counterclaims that Jesse raises in the present litigation.

In addition, the district court erred to the extent it concluded that issue preclusion barred Malcmacher from "relitigat[ing]" "[t]he truthfulness of [Jesse's] [d]eclaration . . . ."[2] The California court had no occasion—and, in fact, specifically declined—to assess the veracity of the declaration. *See Jesse*, 2016 WL 9450683, *5, n. 4. Thus, that issue is not precluded from being litigated in the present action.

That said, the district court correctly concluded that res judicata bars Jesse's counterclaim for intentional interference with business relations. Jesse claims that Malcmacher "intentionally interfered with Jesse's professional and business relationship of good standing with the [Board]" when he purportedly failed to tell Jesse that the courses Jesse performed on behalf of the AAFE had not received Board approval. Thus, the claim is based on Malcmacher's alleged misrepresentations and therefore shares the same set of facts as the claims Jesse asserted in the California litigation. Jesse could have brought this claim in the California litigation and, as a result, he is precluded from asserting it now.

---

[2] Recall that Malcmacher based his abuse of process claim, and some of his malicious prosecution claims, on the fact that Jesse purportedly filed a declaration in the California litigation that was inconsistent with his deposition testimony.

**B.** **Whether the District Court Erred when it Granted Judgment in Favor of Jesse on Malcmacher's Malicious Prosecution and Abuse of Process Claims**

The question now is whether the district court erred when it granted summary judgment to Jesse on Malcmacher's malicious prosecution and abuse of process claims on the ground that Malcmacher failed to present evidence supporting them. This court reviews a grant of summary judgment de novo. *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018).

Whether Malcmacher presented evidence sufficient to survive summary judgment on his malicious prosecution and abuse of process claims depends on California law. This lawsuit is in federal court under diversity jurisdiction, so we must apply the forum state's—that is, Ohio's—choice-of-law rules. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). Under Ohio's rules, "there is a presumption that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Bertram v. Norden*, 823 N.E.2d 478, 482 (Ohio Ct. App. 2004) (citation omitted). Here, Malcmacher's alleged injury—and all of the conduct causing it—occurred in California. Accordingly, California law governs.

**1.** **Malicious Prosecution**

To survive summary judgment on a malicious prosecution claim under California law, Malcmacher must prove that: (1) the challenged litigation was terminated in his favor, (2) Jesse brought the litigation without probable cause, and (3) the litigation was initiated with malice. *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP*, 109 Cal. Rptr. 3d 143, 160 (Cal. Ct. App. 2010); *see also Zamos v. Stroud*, 32 Cal. 4th 958, 965-66 (Cal. 2004).

Whether probable cause supports a claim "is a question of law to be determined by the court from the facts established in the case." *Franklin Mint Co.*, 109 Cal. Rptr. 3d at 161 (citation omitted). In assessing whether probable cause supports a claim, the "court must construe the allegations of the underlying complaint liberally in a light most favorable to the malicious

prosecution defendant." *Sangster v. Paetkau*, 80 Cal. Rptr. 2d 66, 74 (Cal. Ct. App. 1998). Probable cause exists for a claim if any reasonable attorney would have believed that the claim was legally tenable. *Id.* at 75.

The "malice" element of a malicious prosecution claim focuses on the litigant's subjective intent in bringing the lawsuit. *Ross v. Kish*, 51 Cal. Rptr. 3d 484, 497 (Cal. Ct. App. 2006). Typically, a litigant acts maliciously when he initiates the litigation for an improper purpose. *Id.*

Here, Malcmacher claims that Jesse lacked probable cause for—and acted with malice in asserting—*each* of the claims he raised in the California litigation.[3]

### a. *Negligent and Intentional Misrepresentation*

Malcmacher has failed to establish that Jesse lacked probable cause to assert or acted maliciously in asserting his negligent and intentional misrepresentation claims.

Jesse based his intentional and negligent misrepresentation claims, respectively, on the fact that Malcmacher falsely represented: (1) the extent of the Board's scrutiny of the workshops, and (2) the legality of the Botox procedures that he instructed Jesse to perform at those workshops.

In rejecting these claims, the California district court reasoned that Jesse had to prove that Malcmacher *affirmatively* misrepresented a material fact to him in order to prevail, and that Jesse had failed to do so. *See Jesse*, 2016 WL 9450683, at *6-7; *see also Lazar v. Superior Court*, 909 P.2d 981, 984 (Cal. 1996); *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 70 Cal. Rptr. 3d 199, 213 (Cal. Ct. App. 2007) (noting that a "positive assertion is required" to prevail on a misrepresentation claim; "an omission or an implied assertion . . . is not sufficient"). Indeed, regarding his negligent misrepresentation claim, the court rejected Jesse's argument that

---

[3] California law allows a plaintiff to maintain a malicious prosecution based on any or all claims asserted against him. *See Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.*, 8 Cal. Rptr. 3d 199, 204 (Cal. Ct. App. 2003).

Malcmacher affirmatively misrepresented the legality of the AAFE seminars during a phone call, reasoning that the statements he relied on were too vague to constitute "positive assertion[s] that could support" his claim. *Jesse*, 2016 WL 9450683, at *6. Further, the court disagreed with Jesse's position that California law allows a plaintiff to base an intentional misrepresentation claim on an act of concealment rather than affirmative misrepresentations. *Id.* at *7.

The fact that Jesse did not prevail on his intentional and negligent misrepresentation claims does not—standing alone—mean that Jesse lacked probable cause to pursue them. *Slaney v. Ranger Ins. Co.*, 8 Cal. Rptr. 3d 915, 926 (Cal. Ct. App. 2004) (noting that "successfully defending a lawsuit does not establish that the suit was brought without probable cause").

And none of the facts Malcmacher cites in his opposition to Jesse's motion for summary judgment suggests that Jesse lacked probable cause for these claims. For instance, Malcmacher claims that Jesse testified that he believed that the procedures he performed at the February seminar were lawful. But the fact that he thought that the procedures complied with law has nothing to do with whether Malcmacher misrepresented their legality. Further, Malcmacher notes that "Jesse admitted he believed that the [cease and desist] letter concluded that the seminar was lawful . . . ." But again, whatever Jesse thought about the letter (which he did not receive until nearly six months *after* the Board issued it to Malcmacher) is irrelevant to what Malcmacher represented to Jesse regarding the letter's contents.

Even if Jesse lacked probable cause for these claims, Malcmacher's claim would still fail because he has not presented evidence demonstrating that Jesse acted with malice. Malcmacher does not address malice until his reply brief, and, even then, he points to no facts suggesting that Jesse acted with malice in asserting *these particular* (i.e., his misrepresentation) claims. As a result, Jesse is entitled to summary judgment on Malcmacher's malicious prosecution claim to the

extent that claim challenges the negligent and intentional misrepresentation claims he asserted in the California litigation.

### b. *Negligence in Preparing Training Materials*

Similarly, Malcmacher has failed to show that Jesse lacked probable cause to assert or acted with malice in asserting his negligence claim. To prevail on a claim for negligence under California law, a plaintiff must prove duty, breach, causation, and damages. *Johnson v. Prasad*, 168 Cal. Rptr. 3d 196, 199 (Cal. Ct. App. 2014).

The basis for Jesse's negligence claim changed throughout the California litigation. Initially, Jesse alleged that Malcmacher acted negligently when he failed to prepare course materials for him to rely on in presenting the AAFE workshops. *See Jesse*, 2016 WL 9450683, *9. He later shifted his position during a hearing on Malcmacher's motion for summary judgment, arguing that Malcmacher acted negligently when he did not screen those same workshop participants to ensure that they were able to perform those procedures.[4] *Id.* Under both theories, Jesse claimed that Malcmacher's shortcomings caused the Board to ultimately accuse him of performing (or supervising) illegal procedures. *Id.*

The district court rejected Jesse's second negligence theory, reasoning that "there is no duty to control the conduct of a third party to prevent harm to a plaintiff absent a special relationship," and that Jesse failed to introduce facts establishing a special relationship. *Id.* at *10. The court did not address his first theory.

---

[4] Recall that part of the Board's accusation against Jesse was that he violated California law when he allowed certain course participants to perform Botox injections on live patients.

Though unclear,[5] Malcmacher seems to claim that Jesse lacked probable cause for this claim (and acted with malice) because he "changed his testimony and allegations" during suit.

But the fact that Jesse changed his theory of negligence does not mean that he asserted that claim without probable cause. Construing Jesse's California claims liberally, Jesse raised a legally tenable negligence claim. Because he worked closely with Malcmacher, he could have reasonably believed that he had a "special relationship" with Malcmacher such that Malcmacher owed him a duty to screen the course participants to ensure that they did not perform—and that Jesse therefore did not supervise—the unlawful procedures.

Further, a party will often change the scope of his claims leading up to trial, which is why the California Rules of Civil Procedure (as well as the Federal Rules) allow him to amend his pleadings. *See* Cal. Civ. Code § 472(a). And, of course, asserting a theory that corresponds to the evidence as it has been developed through discovery—or that appears more likely to succeed than a prior theory—does not amount to maintenance of litigation "for an improper purpose." *Ross*, 51 Cal. Rptr. 3d at 497. Accordingly, Malcmacher has failed to show that Jesse lacked probable cause to assert or acted with malice in asserting his negligence claims.

### c. *Elder Abuse*

Next, Jesse claimed that Malcmacher violated California's prohibition on elder abuse. Relying on Cal. Welf. & Inst. Code § 15610.07(a)(3)—which states that elder abuse encompasses

---

[5]While Malcmacher cites to various parts of the record and generally argues that Jesse lacked probable cause for *all* of his claims, he does not explain how any of those facts support his position that Jesse lacked probable cause for his *negligence* claim. The only fact Malcmacher cites that relates to whether Jesse had probable cause for his negligence claim is the fact that Jesse "changed his . . . allegations several times between the [Board dispute], California [litigation], and this lawsuit."

"[f]inancial abuse"—he alleged that Malcmacher "took financial advantage of [him] by obtaining his services with the intent to defraud."

The district court rejected this claim. It pointed out that "financial abuse," as defined by Cal. Welf. & Inst. Code § 15610.30(a), occurs only when a person takes or obtains the "real or personal property of an elder" for a wrongful use or intent to defraud, and it reasoned that Jesse's *services* do not constitute "real or personal property." *Jesse*, 2016 WL 9450683, at *8.

Malcmacher argues that Jesse lacked probable cause for his elder abuse claim because Jesse testified during his deposition that he: (1) "did not think that Malcmacher took any actions towards him based on his age," and (2) believed the seminars were lawful.

These facts do not suggest that Jesse lacked probable cause to pursue this claim. Though Jesse testified that Malcmacher did not take any actions against him based on his age, the elder abuse statute does not require a plaintiff to prove that he was taken advantage of based on his age. Rather, the statute applies to any "elder or dependent adult." *See* Cal. Welf. & Inst. Code § 15610.30(a). Additionally (and as noted above), the fact that Jesse believed the seminars were lawful does not mean that Malcmacher did not represent their unlawfulness. Accordingly, Malcmacher's claim that Jesse committed malicious prosecution when he filed his elder abuse claim is unsupported by the record.

#### d. *False Promise*

Jesse alleged in the California litigation that Malcmacher made a false promise because he promised to pay Jesse the attorneys' fees Jesse incurred defending the Board's charges but "never intended to perform this promise . . . ."

The district court rejected this claim, reasoning that a false-promise plaintiff must prove that the promisor had no intention of keeping his promise at the time it was made, and that Jesse had failed to submit evidence supporting that requirement. *Jesse*, 2016 WL 9450683, at *7, n.5.

Malcmacher now argues that Jesse lacked probable cause for this claim, but Malcmacher has failed to cite to any facts suggesting that Jesse could not have reasonably believed that Malcmacher had no intention of performing his promise at the time it was made. As a result, Jesse is entitled to summary judgment on Malcmacher's malicious prosecution claim to the extent it challenges the propriety of Jesse's false promise claim.

### e. *Fraudulent Concealment*

Jesse claimed in the California litigation that Malcmacher concealed the cease and desist letter from him. And the facts developed during that litigation revealed that, though Malcmacher received that letter in January 2012—weeks before Jesse hosted the February seminar giving rise to the Board's charges—Jesse did not learn of the letter until July when a Board investigator visited his office.

The California district court rejected Malcmacher's motion for summary judgment with respect to this claim, noting that there was a dispute of fact as to "whether [Jesse] would have appeared as an instructor at [Malcmacher's] workshops had he known of the existence of the [cease and desist] [l]etter." *Jesse*, 2016 WL 9450683, at *7.

Because Jesse's concealment claim survived summary judgment, he necessarily had probable cause to assert it. Indeed, under California law, "a trial court judgment"—including a denial of summary judgment—"in favor of the plaintiff . . . unless obtained by means of fraud or perjury, establishes probable cause to bring the underlying action . . . ." *Wilson v. Parker, Covert*

*& Chidester*, 28 Cal. 4th 811, 817 (Cal. 2002). Accordingly, Malcmacher's claim that Jesse committed malicious prosecution in asserting his concealment claim is legally foreclosed.

### f. *Breach of Contract and Covenant of Good Faith*

Jesse claimed that Malcmacher breached an oral contract regarding payment of his attorneys' fees. Under California law, a breach of contract claim requires the plaintiff to prove "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the plaintiff." *Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1143 (E.D. Cal. 2012). And of course, a contract only exists if supported by consideration.[6] *Kajima/Ray Wilson v. Los Angeles Cty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000) (noting that, ordinarily, "consideration must be given in exchange for the promise sought to be enforced" (citation omitted)).

Jesse's testimony regarding the basis for his breach of contract claim frequently changed through the course of the California litigation. He initially claimed that he and Malcmacher "entered into an oral agreement whereby [Malcmacher] agreed to pay [his] out-of-pocket defense costs in exchange for [his] agreement to continue to serve as an instructor for workshops organized and presented by [Malcmacher]," but that Malcmacher failed to pay. During his deposition, however, Jesse testified that he did not promise Malcmacher anything in return. Then, after Malcmacher moved for summary judgment on his breach of oral contract claim, Jesse submitted a sworn declaration stating that, "[i]n exchange for [his] agreement to retain the same counsel [as Malcmacher], [Malcmacher] offered . . . to reimburse [his] out-of-pocket defense costs and fees."

---

[6] California law recognizes the doctrine of promissory estoppel, under which a party may enforce another's promise even absent consideration. But "promissory estoppel is distinct from [breach of] contract," *Signal Hill Aviation Co. v. Stroppe*, 158 Cal. Rptr. 178, 185 (Ct. App. 1979), and Jesse did not assert a promissory estoppel claim in the California litigation.

Based on this testimony, Jesse's claims survived summary judgment. *Jesse*, 2016 WL 9450683, at *7-8. At trial, Jesse reverted back to his deposition testimony.

A jury could find that a reasonable attorney would have found Jesse's breach of contract claim legally untenable (and lacking in probable cause) after he testified that no consideration supported the promise. As such, the propriety of Jesse's maintenance of this claim hinges on the veracity of his declaration. Given the circumstances surrounding Jesse's declaration and the fact that his trial testimony waffles, a reasonable jury could find that Jesse's declaration was false and that he *maintained* his breach of contract claim *after* discovering that it lacked probable cause.

A reasonable jury could further find that Jesse acted with malice in maintaining his breach of contract claim because, under California law, "malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause." *Daniels v. Robbins*, 105 Cal. Rptr. 3d 683, 700 (Cal. Ct. App. 2010) (emphasis in original).

Accordingly, the district court erred in rejecting Malcmacher's malicious prosecution claim to the extent it challenges the propriety of Jesse's breach of contract claim.[7]

### 2. Abuse of Process

"[A]buse of process arises when one uses the court's process for a purpose other than that for which [it] was designed." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (Cal. 2006) (citations omitted). To survive summary judgment on such a claim, "a litigant must establish that the

---

[7] The interim adverse judgment rule does not mandate dismissal of Malcmacher's claims challenging the propriety of Jesse's breach of contract claim. Though Jesse's breach of contract claim survived summary judgment—which would ordinarily trigger the adverse judgment rule, thereby defeating Malcmacher's malicious prosecution claims (discussed above)—that rule is inapplicable *if* Jesse obtained the judgment "by means of fraud or perjury . . . ." *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 817 (Cal. 2002). As noted, a reasonable jury could conclude that Jesse's declaration contained false statements. Thus, a jury could conclude that Jesse defeated Malcmacher's motion for summary judgment on that claim "by means of fraud or perjury," rendering the doctrine inapplicable. *Id.*

defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." *Id.* (citation omitted). A party acts with an ulterior motive if he seeks "a benefit totally extraneous to" the litigation. *Ion Equip. Corp. v. Nelson*, 168 Cal. Rptr. 361, 364 (Cal. Ct. App. 1980).

Malcmacher claims that Jesse committed abuse of process during the California litigation in two instances. The first is when Jesse purportedly filed a false declaration in an effort to survive summary judgment. The second instance arose when he filed his lawsuit in California because, in doing so, he ignored a provision in the AAFE agreements stating that the agreements "shall be governed by the laws of the State of Ohio . . . ." Malcmacher says that Jesse committed these acts to "extort [him] into making a quick, favorable settlement."

The district court granted summary judgment in favor of Jesse on Malcmacher's malicious prosecution claims, reasoning that Malcmacher "failed to present any evidence by which a jury could find that [Jesse's] true motivation for filing [the] [d]eclaration was to 'legally extort' money from or retaliate against [Malcmacher]."

### a. *False Declaration*

The district court erred in concluding that Malcmacher failed to meet his burden of presenting evidence establishing that Jesse acted with an ulterior purpose when he purportedly filed a false declaration in an effort to avoid summary judgment. Principally, the district court failed to consider that an ulterior motive may be inferred from the commission of a willful act "not proper in the regular conduct of the proceedings." *See Rusheen*, 37 Cal. 4th at 1057; *Younger v. Solomon*, 113 Cal. Rptr. 113, 119 (Cal. Ct. App. 1974) (inferring ulterior motive based on wrongful act). And here, as explained above, a reasonable jury could find that—based on his deposition and trial testimony—Jesse submitted a false declaration, and, therefore, committed a willful act "not

proper in the regular conduct of the proceedings," *Rusheen*, 37 Cal. 4th at 1057; *Kappel v. Bartlett*, 246 Cal. Rptr. 815, 820 (Cal. Ct. App. 1988) (knowingly filing a false declaration constitutes a "wilful act" that "is not proper in the regular conduct of [a] proceeding").

### b. *Filing Suit in California*

But the district court correctly rejected Malcmacher's argument that Jesse abused the litigation process by filing suit in California rather than Ohio. Indeed, "the mere filing of a complaint cannot constitute an abuse of process." *Drasin v. Jacoby & Meyers*, 197 Cal. Rptr. 768, 770 (Cal. Ct. App. 1984) (citations omitted). Further, nothing in the AAFE agreements required Jesse to assert any claims he had against Malcmacher in Ohio. Thus, Malcmacher's abuse of process claim based on Jesse's filing of a lawsuit in California rather than Ohio fails.

### C. <u>Whether the District Court Erred in Granting Judgement in Favor of Malcmacher on Jesse's Counterclaims</u>

Finally, in the present litigation, Jesse filed counterclaims against Malcmacher, asserting that Malcmacher committed malicious prosecution and abuse of process during the course of the California litigation. He alleged that Malcmacher committed malicious prosecution when he filed a counterclaim against him. Further, Jesse claimed that Malcmacher abused the discovery process when he used it to pursue his counterclaim (which had been dismissed) "for [the] ulterior purpose[] of driving up [his] attorneys fees" in the California litigation.[8]

The district court dismissed both claims for lack of plausibility. It stated: "there are no allegations set forth in the . . . [c]ounterclaim sufficient to establish that [Malcmacher] perverted proceedings in the California [litigation] for an ulterior purpose and no allegations to substantiate

---

[8] Jesse claimed that Malcmacher committed malicious prosecution and abuse of process when he initiated the *Ohio* litigation. That malicious prosecution claim (if any) has not yet accrued. *Ray v. First Fed. Bank*, 71 Cal. Rptr. 2d 436, 438 (Cal. Ct. App. 1998).

[Jesse's] assertion that the single [b]reach of [c]ontract [c]ounterclaim filed in the California [litigation] by [Malcmacher] . . . was initiated with malice and/or without probable cause . . . ."

This court reviews "de novo a judgment on the pleadings granted pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, using the same standard as applies to review of a motion to dismiss under Rule 12(b)(6)." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (citations omitted). Thus, in assessing the adequacy of Jesse's counterclaims, we must accept Jesse's factual allegations as true and determine whether, under those facts, his claims are plausible. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008).

The district court correctly dismissed Jesse's malicious prosecution claim for lack of plausibility. A brief review of his counterclaim reveals that he has done nothing more than allege the elements of the claim—i.e., that Malcmacher initiated a counterclaim against him in California, the claim was terminated in his favor, and Malcmacher acted with malice and without probable cause in asserting the counterclaim. Accordingly, his counterclaim contains only legal conclusions, which "are not enough" to survive a motion for judgment pursuant to Rule 12(c). *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017).

But Jesse's abuse of process counterclaim survives. For that counterclaim, Jesse alleges that Malcmacher abused the discovery process by continuing to seek information related to his breach of contract counterclaim, even after the California district court had dismissed it. He further alleges that Malcmacher engaged in that misconduct "for [the] ulterior purpose[] of driving up [his] attorneys fees, costs and expenses in the" California litigation. Because Jesse alleged specific facts related to Malcmacher's purported litigation misconduct, Jesse has set forth a plausible claim for abuse of process. *Engler*, 862 F.3d at 575; *see also Younger*, 113 Cal. Rptr. at 117 (recognizing

that a litigant may base an abuse of process claim on misconduct that occurs during any "procedure[] incident to litigation").

**AFFIRMED IN PART** and **REVERSED IN PART.**